IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Melvin Antonio Sims, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 6:09-295-HMH |
| ) | |
| vs. ) | **OPINION & ORDER** |
| ) | |
| City of Greenville; Greenville Police ) | |
| Department; Chief Willie J. Johnson; and ) | |
| Officers John Doe(s), [unidentified police ) | |
| officers], ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on Defendants' motion for summary judgment. For the reasons set forth below, the court grants Defendants' motion.

I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the alleged actions of Patricia Mullinax ("Officer Mullinax")[1], a police officer, on or about January 19, 2007. On January 19, 2007, Plaintiff Melvin Antonio Sims ("Sims") was found by his roommate, John Smith ("Smith"), "laying on the upstairs bed unresponsive with shallow breathing."[2] (Pl. Mem. Opp'n Summ. J. 2.) Smith telephoned 911 and the "Greenville Fire Department, City police and EMS all responded." (Id.) The EMS responders "used Narcan in order to try to resuscitate" Sims. (Id.) According to the EMS responders' medical report, Sims became combative when the EMS staff attempted to treat him.

---

[1] According to Defendants, Officer Mullinax is "referred to in [the] initial complaint as Officers John Doe(s), [unidentified police officers]." (Defs. Mem. Supp. Summ. J. 1.)

[2] It was later discovered that Sims consumed approximately twenty pills that were prescribed to Smith. (Sims Dep. 20.); (Defs. Mem. Supp. Summ. J. Ex. 3 (Medical Reports 1).)

1

(Defs. Mem. Supp. Summ. J. Ex. 3 (Medical Report 2).)  Sims allegedly "spit at EMT M. Higgins and str[uck] him in the face."  (Id.)  Consequently, Sims was placed in handcuffs by Officer Mullinax.  Before being taken to the hospital, Sims suffered seizure-like activity for approximately fifteen seconds.  (Id. at 3.)  Once stabilized, Sims was placed in a stretcher chair "with his hands between his back and the back of the chair and strapped to the chair with the chair restraints."  (Defs. Mem. Supp. Summ. J. 3.)  Sims remained handcuffed while strapped in the stretcher chair.  "Officer Mullinax did not accompany [Sims] in the ambulance but drove separately to the hospital where she removed [Sims'] handcuffs" upon arriving at the hospital.  (Id.)  Smith observed all of these events.

Sims states that the last thing he remembers from January 19, 2007, is "being in the bedroom upstairs."  (Id. Attach. 1 (Sims Dep. 24).)  "The next thing [he] remember[ed] [was] waking up in the hospital with the doctors telling [him] that [his] shoulders were broken."  (Id.)  While in the hospital, Sims was diagnosed with bilateral shoulder fractures and was "treated surgically with insertion of prosthetic humeral heads."  (Pl. Mem. Opp'n Summ. J. 4.)  Sims' shoulder injuries were "newly-symmetrical injuries."  (Defs. Mem. Supp. Summ. J. Ex. 3 (Medical Reports 11).)

Sims filed a complaint against Defendants in the Court of Common Pleas for Greenville County, South Carolina on January 20, 2009, alleging that Officer Mullinax's use of handcuffs to restrain him was "excessive force" which "caused [Sims] to suffer fractured shoulders . . . and a sprain of his right wrist and hand" in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1983, and the South Carolina Tort Claims Act, S.C. Code Ann.

§ 15-78-10, et seq. ("SCTCA"). (Compl. ¶¶ 10-11.) During discovery, Sims provided the expert testimony of Dr. Rebecca Barksdale ("Dr. Barksdale"), a family medicine physician, who opined that "it appears that more likely than not, [Sims'] shoulders were broken as a result of being restrained by the police . . . [and] it does not appear that his seizures were violent enough to cause any fractures." (Defs. Mem. Supp. Summ. J. Ex. 3 (Dr. Barksdale Letter).) Defendants removed this case to federal court on February 4, 2009, and filed the instant motion for summary judgment on August 4, 2009. Sims filed a memorandum in opposition on August 19, 2009. Defendants filed a reply on August 31, 2009.

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### B. Defendants' Motion for Summary Judgment

Defendants allege that they are entitled to summary judgment because Sims has failed to establish a genuine issue or material fact regarding excessive force, they are not liable under a respondeat superior theory to § 1983, Officer Mullinax is entitled to qualified immunity, they are immune from suit under the SCTCA, and the SCTCA claim fails on the merits.

### 1. 42 U.S.C. § 1983

Sims alleges a § 1983 violation against all Defendants. With regard to Sims' § 1983 claims against the City of Greenville, the Greenville Police Department ("GPD"), and Chief Willie J. Johnson ("Chief Johnson"), they are without merit. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (U.S. 2009). Likewise, "a municipality cannot be held liable *solely* because it employs a tortfeasor"; therefore, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 692 (1978). Sims' excessive force allegations deal solely with the actions of Officer Mullinax. Based on the foregoing, the court grants summary judgment to the City of Greenville, the GPD, and Chief Johnson as to the § 1983 claim.

With respect to the § 1983 claim against Officer Mullinax, she alleges qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In Saucier v. Katz, 533 U.S. 194, 201 (2001), the United States Supreme Court established a "two-step sequence for resolving government officials' qualified immunity claims." Pearson v. Callahan, 129 S. Ct. 808, 815 (U.S. 2009). "First, a court [has to] decide whether the facts that a plaintiff . . . allege[s] . . . [set] out a violation of a constitutional right. Second, if the plaintiff . . . satisfie[s] this first step, the court decide[s] whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 815-16 (internal citations omitted). In Pearson, however, the United States Supreme Court held that "while the [Saucier test] is often appropriate, it should no longer be regarded as mandatory." Id. at 818. "The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. Thus, Pearson "does not prevent the lower courts from following the Saucier procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." Id. at 821.

The court finds that the Saucier procedure is worthwhile in the instant case and will first consider whether Sims has alleged a violation of a constitutional right. Sims alleges that Officer Mullinax "used excessive force" in restraining him in handcuffs resulting in an unreasonable seizure under the Fourth Amendment. (Compl. ¶¶ 10-11.) "A seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." Graham v. Connor, 490

U.S. 386, 395 n.10 (1989) (internal quotation marks omitted). Handcuffing and arresting Sims constituted a seizure.³ See Robbins v. California, 453 U.S. 420, 450 (1981), overruled on other grounds by, United States v. Ross, 456 U.S. 798, 824 (1982) ("[E]very arrest is a seizure of the person within the meaning of the Fourth Amendment."). Accordingly, the court will first determine whether the seizure was reasonable under the Fourth Amendment.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (internal quotation marks omitted). "Because one of the factors is the extent of the intrusion, it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out." Tennessee v. Garner, 471 U.S. 1, 8 (1985). Hence, the question is whether "the totality of the circumstances justified a particular sort of search or seizure." Id. at 9.

Defendants allege that "after EMS used Narcan to resuscitate [Sims], he became combative and spit at and hit the EMS worker attending him. At that time, so treatment could continue and to protect the EMS worker, the police officer present, Officer Mullinax handcuffed [Sims'] hands behind his back while he was still on the bed." (Defs. Mem. Supp. Summ. J. 3.) Mullinax also placed Sims under arrest "[a]fter [he] spit and slapped the EMS provider in the face." (Pl. Mem. Opp'n Summ. J. Attach. (Officer Mullinax Dep. 7).) Once stabilized, Sims

---

³ Officer Mullinax submitted an incident report against Sims for assault and battery on an EMS provider on January 19, 2007. (Pl. Mem. Opp'n Summ. J. Ex. 1 (Incident Report).) An arrest warrant for Sims for the assault and battery charge was also issued on January 19, 2007. (Id. Ex. 2 (Arrest Warrant).)

"was placed in a stretcher chair by EMS workers with his hands between his back and the back of the chair and strapped to the chair with the chair restraints." (Id.) Thus, it appears that Sims was restrained by handcuffs as well as the chair restraints. Sims argues that being placed in the "stretcher chair by EMS workers . . . eliminat[ed] any reason whatsoever for handcuffs to remain on . . . [and] Officer Mullinax grossly neglected to remove the handcuffs." (Id. at 3.)

Sims denies that he was combative or that he spit at the EMS workers. (Sims Aff. ¶ 5.) However, Sims has also stated that he has no recollection of the events that transpired when the EMS arrived. Sims relies solely on Smith's alleged observations of what occurred. (Defs. Mem. Supp. Summ. J. Attach. 1 (Sims Dep. 24).) Smith's recollection of the events is wholly inconsistent with the other evidence in the record.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Smith's testimony is inconsistent with the documentary evidence in the record–the EMS Medical Record and GPD Incident Report stating that Sims became combative, spit at, and struck an EMS worker, and an arrest warrant against Sims for assault and battery of an EMS provider. Moreover, Sims has offered no plausible reason or evidence to support the untenable position that Officer Mullinax knowingly falsified reports to justify her actions.

Consequently, the court finds that the overwhelming evidence in the record indicates that Officer Mullinax was objectively reasonable in restraining Sims after his behavior prevented EMS workers from providing him with necessary medical attention. As such, Officer Mullinax's actions did not violate the Fourth Amendment and she did not deprive Sims of a right secured by

the Constitution or laws of the United States. Thus, the court finds that there is no genuine dispute of a material fact. Accordingly, Sims' § 1983 claim as to Officer Mullinax is without merit. Therefore, Defendants' motion for summary judgment is granted as to the § 1983 claim.

### 2. SCTCA Claim

Without listing any specific facts to support his allegation, Sims also alleges that Defendants violated the SCTCA. (Compl. ¶ 13.) "Any person who may suffer a loss proximately caused by a tort of the State, an agency, a political subdivision, or a governmental entity, and its employee acting within the scope of his official duty may file a claim [under the SCTCA]." S.C. Code Ann. § 15-78-50(a). "The [SCTCA] governs all tort claims against governmental entities and is the exclusive civil remedy available in an action against a governmental entity or its employees." Proctor v. Dept. of Health & Envtl. Control, 628 S.E.2d 496, 502 (S.C. Ct. App. 2006) (internal quotation marks omitted). "The [SCTCA] waives sovereign immunity for torts committed by the State, its political subdivisions, and governmental employees acting within the scope of their official duties." Id. (internal quotation marks omitted). "However, the Act's waiver of governmental immunity is limited [and] . . . the provisions of the Act must be liberally construed in favor of limiting the liability of the State." Id. (internal quotation marks and citations omitted).

Defendants argue that they are entitled to immunity under the SCTCA. The court agrees. "The burden of establishing a limitation upon liability or an exception to the waiver of immunity under the Tort Claims Act is upon the governmental entity asserting it as an affirmative defense." Proctor, 628 S.E.2d at 503. Defendants assert discretionary immunity pursuant to § 15-78-60(5) which states that a "governmental entity is not liable for a loss resulting from . . . the exercise of

discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee." "To establish discretionary immunity, the governmental entity must prove that the governmental employee[], faced with alternatives, actually weighed competing considerations and made a conscious choice." Clark v. South Carolina Dept. of Public Safety, 578 S.E.2d 16, 22 (S.C. Ct. App. 2002) (internal quotation marks omitted). "Furthermore, the governmental entity must show that in weighing the competing considerations and alternatives, it utilized accepted professional standards appropriate to resolve the issue before them." Id. (internal quotation marks omitted).

Officer Mullinax arrived at Sims' residence in response to a 911 telephone call. At the time of Sims' arrest, EMS workers were attempting to provide Sims with medical assistance. According to Smith, Sims was "confused" and in a "daze" when the EMS worker attempted to assist Sims. (Def. Mem. Supp. Summ. J. Attach. 2 (Smith Dep. 25).) The overwhelming evidence in the record also establishes that Sims, either consciously or unconsciously, was combative with the EMS workers trying to assist him. Accordingly, Officer Mullinax made a discretionary decision to handcuff Sims to protect him as well as the EMS workers. See e.g., United States v. Heath, 455 F.3d 52, 55 (2d Cir. 2006) (noting a "police officer's discretionary decision to arrest"); Spry v. State, 914 A.2d 1182, 1188-89 (Md. 2007) ("[I]t is the police officer who retains the discretion to affect an arrest. We have iterated that the decision to arrest is an important 'discretionary judgmental power granted to a police officer,' and one that is 'basic to the police power function of government[ ] . . . and . . . critical to a law enforcement officer's ability to carry out his duties.'"); State v. Rhodes, 282 S.E. 2d 809, 811 (N.C. Ct. App. 1981)

(noting that "[t]he amount of force which a law officer may use in effecting a lawful arrest is largely within the discretion of the officer"). Based on the foregoing, Defendants are immune from suit under the SCTCA.

Moreover, even if Defendants are not immune from suit under the SCTCA, this claim fails on the merits. The evidence in the record does not support the inference that Officer Mullinax was reckless in handcuffing or arresting Sims. Sims generally alleges that Defendants "recklessly arrested" him and used excessive force which "caused [him] to suffer fractured shoulders . . . and a sprain of his right wrist and hand." (Pl. Mem. Opp'n Summ. J. 3.); (Compl. ¶ 12.) Sims also alleges that Officer Mullinax "grossly neglected to remove the handcuffs or to accompany [Sims] in the ambulance to monitor and remove the handcuffs in order to prevent harm." (Pl. Mem. Opp'n Summ. J. 3.) Accordingly, Sims' underlying tort claim against Defendants is without merit. Therefore, the court grants Defendants' motion for summary judgment as to the SCTCA claim.[4]

Based on the foregoing, the court grants Defendants' motion for summary judgment. Therefore, it is

**ORDERED** that Defendants' motion for summary judgment, docket number 23, is granted.

**IT IS SO ORDERED.**

                                        s/Henry M. Herlong, Jr.
                                        Senior United States District Judge

Greenville, South Carolina
September 24, 2009

---

[4] In his complaint, Sims alleges that "this action is bought [sic] under the Civil Rights Act of 1964." (Compl. ¶ 7.) However, Sims fails to set forth any facts to support this cause of action outside of a blanket reference to the Civil Rights Act. Accordingly, the court grants Defendants' motion for summary judgment as to the claim under the Civil Rights Act of 1964.